HELENE N. WHITE, Circuit Judge,
dissenting.
I respectfully dissent. I view this case somewhat differently than does the majority, and I would affirm the district court.
I do not see this case as presenting the straight-forward question “who decides who decides” in the context of an agreement that is silent on the issue. Rather, as noted by the district court, there are two agreements the enforcement of which are implicated by this decision.
I agree with the majority, as well as the district court, that the two agreements must be read together. The district court observed that the Transition Agreement provides that certain matters are subject to challenge under the grievance and arbitration procedure and certain matters are not, but the Transition Agreement sets forth no arbitration and grievance procedure. The court concluded that “the grievance and arbitration' procedure to which the RTW [Transition Agreement] refers is that contained in the parties’ CBA [the 2007 Agreement].” This is clearly correct.
The court then reasoned that because the grievance and arbitration procedure of the 2007 Agreement is the controlling procedure for grievance and arbitration — even under the Transition Agreement because no other procedure was invoked or contemplated by the Transition Agreement, although the Transition Agreement declared some matters subject to challenge under the grievance and arbitration procedure — the court should look to the procedure set forth in the 2007 Agreement to determine who should decide whether the 93 grievances are arbitrable under the 2007 Agreement or not arbitrable under the Transition Agreement. It is undisputed that the 2007 Agreement unambiguously commits such questions to the arbitrator, and thus the district court determined that the arbitrator should decide whether the grievances are arbitrable. I find no error in this analysis.
The language of the Transition Agreement supports the district court’s conclusion. The Agreement states that certain matters “shall not be subject to challenge under the grievance and arbitration procedure, or otherwise.” It does not state that the matters shall not be subject to the grievance and arbitration procedure. In stating that the matters are not subject *714 to challenge under the procedure, the Agreement focuses on the substantive arbitrability of the matter, rather than the procedure for determining the substantive arbitrability. Stated differently, a matter that is not subject to challenge under the procedure is a matter that cannot be challenged through the grievance and arbitration procedure, but, as "with all matters as to which arbitration is demanded, the arbitrator is confided with the duty to declare that the grievance and arbitration procedure cannot be invoked to challenge the matter. In contrast, a matter that is not subject to the grievance and arbitration procedure is one that is simply not subject to the procedure at all.
Further, as ineluctably true as the majority’s assertion that the Transition Agreement explicitly exempted from challenge under the grievance and arbitration procedure all matters covered by the Transition Agreement or arising during the Transition Period except certain specified issues, is the assertion that grievances not covered by the Transition Agreement and not arising during the six-month period are covered by the 2007 Agreement, which explicitly commits the question of arbitrability to an arbitrator. If the grievances fall into the latter category, allowing a court to decide the question of arbitrability would violate the parties’ agreement.
AK Steel asserts that the grievances arise under the Transition Agreement, and the majority opinion in effect assumes that this is an accurate characterization. The Union, however, argues that the grievances arise under the 2007 Agreement. Thus, in the instant case, there is a conflict between the second principle identified by the majority — “unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination” — and the fourth principle identified by the majority — “where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate ‘unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.’” United Steelworkers of Amer. v. Mead Corp., 21 F.3d 128, 131 (6th Cir.1994).
Focusing exclusively on the second principle would lead to the conclusion that because the Transition Agreement does not “unmistakably provide” that the question of arbitrability is for the arbitrator, the question is one for the courts; however, focusing exclusively on the fourth principle would lead to the conclusion that because the 2007 Agreement clearly provides that the arbitrator should decide whether a grievance is arbitrable, the question is one for the arbitrator.
The Union’s district court complaint asserts that it presented AK Steel with 93 grievances alleging that AK Steel violated specific terms of the 2007 Agreement, and that each grievance “raised a claim which upon its face and as presented fell within the scope of the grievance and arbitration provisions of the CBA.” The 2007 Agreement provides that the arbitrability of such claims will be determined by an arbitrator. If, indeed, the grievances arise under the 2007 Agreement rather than the Transition Agreement, the majority decision will have the effect of giving the Transition Agreement precedence over the 2007 Agreement not just during the Transition Period, but also for the succeeding period, in direct violation of both the Transition Agreement and the 2007 Agreement.
In short, under the majority decision, AK Steel could assert that any grievance concerns a matter that is covered by the *715 Transition Agreement or that occurred during the Transition Period, and thereby deprive the Union of the contractual right to have an arbitrator decide whether the grievance is arbitrable; or, under the district court decision, the Union can assert that a grievance arises under the 2007 Agreement, and force arbitration of the arbitrability question, even though the claim may not be arbitrable. The district court determined that the second alternative is most consistent with the governing law and the parties’ written agreements. I agree and would affirm.